UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. BAH-24-0256 |
| : | |
| IVAN MENDEZ ROMAN, : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM CONCERNING DETENTION

The United States of America, by counsel, submits this memorandum in advance of the hearing on review of detention requested by the defendant, Ivan Mendez Roman. For the reasons discussed below, the Defendant should remain detained pending his trial.

### PROCEDURAL BACKGROUND

The Defendant is charged by indictment with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; conspiracy to possess firearms in furtherance of a drug-trafficking crime in violation of 21 U.S.C. § 924(o); and possession of a firearm by a convicted person in violation of 18 U.S.C. § 922(g)(1). The Defendant had a detention hearing before the Honorable Mark J. Coulson, United States Magistrate Judge, on October 25, 2024. ECF 25. Following that hearing, Judge Coulson ordered that Roman be detained pending his trial. ECF 29. On November 6, 2024, Roman filed the instant request for review of that decision.

### ARGUMENT

There is a rebuttable presumption that Ivan Mendez Roman should be detained in this case because he is charged with a qualifying narcotics distribution offense. *See* 18 U.S.C. § 3142(e)(3)(A). However, even if this were not a presumption case, detention would still be

appropriate because of the nature of the offense, the weight of the evidence, and the fact that the Defendant is charged with conduct that occurred while he was on state probation following an earlier state conviction. In the following sections, the government will address the factors set forth in 18 U.S.C. § 3142(g).

1. **Nature and Circumstances of the Offenses Charged**

    a. Introduction

Ivan Mendez Roman and his co-defendant, Andre Berry, possessed a veritable armory of firearms as well as cocaine packaged for distribution, inside of two vacant (or semi-vacant) houses on the 500 block of N. Millington Avenue in Baltimore City. When police arrived to execute a search warrant at one of the houses, Roman attempted to flee through a ceiling crawlspace into a neighboring house, where he was found and arrested. Drugs and guns were found in both houses. Roman's DNA was found on one of the recovered firearms. On the day before the searches, a YouTube video[1] was posted in Roman's YouTube channel; in that video, Roman is seen handling firearms, including firearms with which he is charged in the indictment.

    b. Search Warrant Information.

The search warrant was based on public source social media images of Ivan Roman and others[2] handling firearms inside 519 N. Millington Avenue. The affiant was familiar with Roman

---

[1] At the beginning of the YouTube video, there is a disclaimer: "Warning – Anything in this video that may resemble any illegal materials are merely props and are shown for entertaining purposes only." The disclaimer is an obvious fabrication. The weapons were real; they were obviously real; many (or all) of the weapons were recovered loaded with ammunition; and they have been test-fired.

[2] As the defense points out, there is little question that other persons have also possessed firearms and drugs at the Millington locations. The YouTube video shows other such people, as

and with the 519 N. Millington location from a previous case in which Roman was charged in connection with firearms recovered from the address.[3]

    c.  Execution of the 519 N. Millington Search Warrant and Flight of Roman and Berry to Nearby Houses.

Police executed the search warrant for 519 N. Millington on March 11, 2024. Next door to 519 is 517. Close to the other end of the row of houses is 511 N. Millington. As discussed below, the case started with 519 but ultimately all three residences were involved in the episode, due to the actions of Roman and his co-defendant Berry.

On the day of the search, detectives conducted pre-raid surveillance of 519 N. Millington Avenue. Although the pre-raid surveillance officers had a camera or video recording device, the battery apparently died or the video device did not function. Therefore, there are no videos or photos of the pre-raid observations. During that surveillance, police observed the following:

- At approximately 11:50am, detectives observed Andre Berry enter the front door of 519 N. Millington Avenue. Berry carried a bag of food.

- At approximately 12:10pm, detectives observed Ivan Roman arrive in a green Infiniti sedan and park nearby. Roman exited the vehicle then walked to the front door of 519 N. Millington Avenue. Roman wore a bright orange jacket and a blue

---

does the social media activity observed prior to the search warrant, and a more recent search warrant was executed at the locations during September 2024 and additional drug and/or gun evidence was found. Roman and his co-defendant are not the only people who use those locations to commit crimes.

3  The past incident in question pertains to Roman's February 2022 firearms charge, which resulted in one of his two convictions.

Miami Dolphins ball cap. Berry opened the front door of the residence and Roman entered.

As police approached 519, officers behind the residence observed a male flee on foot from the rear of 519 and then enter the rear of 511 N. Millington Avenue. After providing a description to detectives, they were able to determine this subject was co-defendant Berry.

Police then secured the block, including 511 and 519 N. Millington Avenue, and attempted to call Berry and Roman out with loudspeakers. Shortly after, police forced entry into 519 N. Millington Avenue. Once inside, police observed certain evidence in plain view (discussed below), although no one was found inside the 519 house. In the rear area of the house, police found an open space in the ceiling. Further investigation revealed that the space in the ceiling led to a crawl space that stretched from 519 N. Millington Avenue to the neighboring house, 517 N. Millington Avenue. Inside the crawl space police found a Miami Dolphins ball cap matching the one worn by Roman as he entered the residence. Inside the crawl space police also found a loaded Canik 9mm handgun.

Still images from police body worn camera show the crawlspace[4]:

---

[4] All of the images in this memorandum are taken from the exhibits that the government marked during the detention hearing before Judge Coulson. The government's entire exhibit set, marked from the detention hearing, is attached as Exhibit A. The image quality in the exhibits as shown in this memorandum are somewhat better than in the hard copy exhibits because the copies used in this memorandum are from electronic copies and the hard copy exhibits were printed to paper.

4



*The open space in the ceiling is seen in the upper left of the photo (Government's Exhibit 3 from the detention hearing (cropped)).*



*Blue baseball hat in the crawlspace (Government's Exhibit 5 from the detention hearing (cropped))*



*Canik 9mm handgun in the crawlspace (Government's Exhibit 6 from the detention hearing (cropped))*

Police obtained consent from the occupants of 517 to search the residence. Police found Roman hiding inside a tote container in the basement. The evidence indicated that Roman had fled from the 519 house into the 517 house using the ceiling crawlspace. In the rear of 517, police did find a space in the ceiling that essentially was the other end of the crawlspace connecting 519 and 517. An image from police BWC showing the 517 end of the crawlspace is below:

6



*Crawl space from 517 N. Millington end (Government's Exhibit 4 from hearing (cropped))*

Police also made entry into 511 N. Millington Avenue and found and arrested Berry.

    d.    <u>Search of 519 N. Millington Avenue</u>

During the search of 519 N. Millington, police found the following evidence:

- As discussed, the blue Miami Dolphins ball cap and a tan-colored Canik 9mm pistol, loaded with 15 rounds of ammunition, were found in the crawl space between 519 and 517 N. Millington Avenue. The Canik 9mm weapon is one of the weapons charged in Roman's § 922(g)(1) count.

- An orange jacket was found in the living room area of 519 N. Millington Avenue. The jacket matched in appearance the jacket detectives observed Roman wearing when he entered 519 during pre-raid surveillance. Inside the jacket, police found 12 pink containers containing suspected cocaine (lab-testing ultimately confirmed

7

that the substance was cocaine).[5]  BWC images of the orange jacket and the drugs are below:



*Pick containers with cocaine from 519 N. Millington (Government's Exhibit 1 (cropped))*

---

5       As discussed below, the jacket from 519 N. Millington also matched a jacket that Roman is seen wearing during his YouTube video, which was posted to YouTube the day before the searches.



*Pink containers with cocaine and orange jacket from 519 N. Millington (Government's Exhibit 2 (cropped).*

- Although not yet charged in the indictment, additional drugs were found in 519 N. Millington. On top of some stacked dry wall in the front room was the following: one plastic bag of a white substance that was lab tested and found not to be a controlled dangerous substance during lab-testing; one plastic bag containing a tan powder substance that was lab-tested and found to contain fentanyl and another substance; and one plastic bag containing 31 gel caps containing a powder substance, which was lab-tested and found to be a mixture containing heroin and fentanyl as well as another substance.

e.     <u>Search of 511 N. Millington Avenue</u>

In light of events that day (Roman fleeing through the crawl space and Berry running from the rear of 519 N. Millington to the rear of 511 N. Millington), police obtained follow-up state search warrants for 511 and 517 N. Millington Avenue. Nothing of evidentiary value was found

9

into the 517 N. Millington residence (although as noted, the Miami Dolphins ball cap and Canik 9mm handgun were found in the crawlspace connecting 519 and 517).

The 511 N. Millington house (the house to which Berry fled) was found to be vacant and essentially in a state of disrepair or semi-construction. A red Mickey Mouse backpack was found in a garbage bag on the first floor of the 511 house. This bag matched in appearance the bag Berry was observed fleeing with when he jumped from the second story window of 519. Inside the red Mickey Mouse bag, police found:

- a Glock 9mm pistol equipped with a machine gun conversion device, a.k.a. "Glock switch," affixed to the rear of the slide; the weapon was loaded with 30 rounds of 9mm ammunition.[6] The weapon was test-fired with the switch installed and did fire as an automatic firearm. The Glock 9mm is one of the weapons charged in Roman's § 922(g)(1) count.

- Various quantities of narcotics, including a quantity of small purple containers from the aforementioned red Mickey Mouse bag that were lab-tested and determined to be cocaine base.

Numerous other firearms were found inside the residence. The weapons found in 511 N. Millington and currently charged in the indictment were the following:

---

6  DNA samples were taken from the Glock according to a Baltimore Police lab report. The DNA mixture is consistent with at least four contributors. The sample was processed using probabilistic genotyping. According to the lab report, Ivan Roman matches an inferred genotype and a match between Ivan Roman and the inferred genotype is 186 thousand times more probable than a coincidental match to an unrelated individual in the population. Andre Berry could neither be included nor excluded as a contributor to the inferred genotype.

10

- A Canik 9mm pistol was found loaded with 10 rounds of 9mm ammunition. This handgun was stored inside a black plastic handgun case and was found concealed in a covered hole in the floor.

- One Black Sheep Tactical AR-pistol,[7] was found loaded with 20 rounds of 5.56 caliber ammunition, and one Anderson Manufacturing AR-pistol, was found loaded with 28 rounds of .223 caliber ammunition. Both pistols were equipped with aftermarket attachments and both were stored inside a black duffel bag found concealed in a covered hole in the floor of the 511 house.

- Three rifles, each loaded, were found concealed behind unfinished drywall at the 511 house.[8]

- One extended "drum" style magazine was recovered from an Adidas duffel bag found inside an open cavity of a wall in the 511 house.

The aforementioned YouTube video has provided additional evidence demonstrating Roman (and Berry's) possession of the firearms. The video is a music video posted to Roman's YouTube channel on March 10, 2024 (the day before the March 11 searches). The video

---

7   DNA samples were taken from various parts or accessories of the Black Sheep pistol. DNA from an unknown male was found on the magazine body. Swabs from one part of the rifle and magazine showed a DNA mixture with at least three contributors; the Baltimore City lab report stated that, after processing the sample through probabilistic genotyping, Ivan ROMAN matches an inferred genotype and a match between Ivan ROMAN and the inferred genotype is 721 billion times more probable than a coincidental match to an unrelated individual in the population. Andre BERRY was excluded as a contributor for that sample.

8   One of the weapons found during the 519 search was a Great Lakes .223/5.56 45 mm NATO rifle. DNA from that weapon was also analyzed a sample from three contributors was found. ROMAN could not be included or excluded as a contributor through an inferred genotype. BERRY was excluded as a contributor of DNA through an inferred genotype.

11

indicates that it was filmed largely inside 511 N. Millington Avenue. Throughout the entire video, Roman, Berry, and other persons pose holding and pointing various firearms. Several of the firearms are distinct enough to be identified as the same firearms recovered during the March 11, 2024, search of 511 N. Millington Avenue. Specifically, Roman is seen in the music video holding different firearms recovered during the search (still images from the YouTube video, also marked as exhibits during the detention hearing, are below:



*Ivan Roman in orange jacket holding tactical AR pistol (Government's Exhibit 7 (cropped)).*

*This weapon had Roman's DNA on it.*



*Ivan Roman holding Glock handgun with automatic conversion switch device in rear of weapon (Government's Exhibit 10)*

12



*Closer view of Glock with conversion switch (also Government's Exhibit 10). The switch is the object sticking out from the rear of the weapon.*

The firearms in the video are distinct and are readily identifiable as the weapons recovered during the Millington searches. For example, the automatic Glock pistol has distinct undermounted flashlight and also displays the protruding switch conversation device in the rear of the weapon.

Likewise, the orange jacket Roman is wearing in the video is identical to the orange jacket that he was seen wearing and from which the pink cocaine containers were found during the 519 N. Millington search on March 11. In particular, the color and the distinct shoulder pad stripe are identical on the jacket as seen in a BWC still from the search and as seen in a still from the YouTube video:

 

*BWC still from search of 519 N. Millington on March 11, 2024 (Government's Exhibit 1)*   *YouTube video still (Government's Exhibit 7)*

2.  **The Weight of the Evidence Against the Defendant**

The weight of the evidence is strong.  The Defendant was arrested following an attempt to flee through a hidden ceiling tunnel from one house to the next.  The evidence left behind (including the Canik firearm in the crawlspace, the Miami Dolphins cap, and the cocaine in the orange jacket) demonstrate that Roman was engaged in armed drug-trafficking activity with Berry. The Defendant's DNA was found on one of the weapons in the 511 house, a tactical AR pistol. The video on Roman's YouTube channel shows him handling multiple firearms, including the modified automatic Glock and the tactical pistol.

14

3.   **History and Characteristics of the Defendant**

Roman has two prior convictions in Baltimore City, Maryland:

- The Defendant was arrested on March 12, 2019 and was ultimately convicted of possession with the intent to distribute controlled substances. *See* Pretrial Services Report (PTSR) at 4. The Defendant received a substantially suspended sentence and two years of probation. The Defendant completed his term of probation with no listed violations. *Id.* at 4-5 (although it should be noted that it appears that the Defendant's probation ended just over two months before he was arrested for his next conviction).

- The Defendant was arrested on February 15, 2022 and convicted for possession of a firearm by a convicted person. *See* PTSR at 6. The Defendant received a suspended sentence and three years of probation. *Id.* The probation period ends on August 31, 2026. *Id.*

A prominent feature of the Defendant's criminal history is the fact that he was on probation for the 2022 firearms conviction when he committed the crime at issue in this case. Indeed, the Defendant remains on probation until August 2026.

The government readily notes that the Defendant's criminal record is less lengthy than many federal defendants (as the defense points out in its own detention memorandum). The government notes that there is no violence in the Defendant's past record. Of course, the Defendant's past drug and firearms offenses pose their own elements of risk to the community. However, the Court has no doubt seen lengthier and more significant criminal histories.

But the fact that the Defendant's criminal history is not as bad as it *could* be is hardly

15

resounding support for release pending trial, given the facts of this case and the Defendant's unsuccessful adjustment for supervision in the past.  This remains a case in which the Defendant has incurred a serious federal narcotics and firearms charge while he was on probation for an earlier state conviction, for a firearms offense.  This remains a case in which the Defendant incurred that prior firearms offense within a depressingly short time after completing his previous probation, for a drug offense.  This remains a case in which the Defendant has spent much of the past five years either with a pending charge or on state probation for drug and firearms offenses that are comparable in their elements to the current charged offense.  Following that five years of state pretrial and probation supervision, the Defendant has a YouTube channel showing him in possession of a fully-automatic Glock handgun and an AR tactical pistol. The Defendant should be detained pending trial.

    **4.**    **Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release.**

The facts relevant to the fourth factor under § 3142 have been discussed already.  The mixed firearms and drug activity in this case poses an obvious danger to the community; the Defendant has incurred prior state convictions involving drugs and firearms; the offense charged here occurred while the Defendant was on probation for one of those state convictions; and the Defendant fled from police and exposed himself, the officers, and the community to risk of harm when he did so.

The defense places considerable reliance on the notion that Roman's criminal activity was somehow limited to the N. Millington block of homes.  That argument misses several key realities.  First, drug-trafficking and illegal weapons activity are not the sorts of crimes that are

16

generally limited to a particular location. They can be committed anywhere that a Defendant chooses to commit them – whether that be in the home, on the street, on a neighboring street, or anywhere else. Drug deals can be conducted in one's home and they can be committed by phone. As Roman's offense conduct shows, they can even be advertised on the internet.

Second, although the North Millington block was where the Defendant and his accomplice were *caught*, there is no reason to believe that the block was the only place the Defendant had committed drug-trafficking or illegal firearms crimes. It would be naïve to believe that the Defendant has only handles guns and drugs within the confines of the N. Millington houses.

Finally, the overall circumstances of this case should leave the Court's with no confidence that the Defendant can be trusted to abide by federal release conditions, no matter how strict. Everything about the facts of this case – Roman's DNA on the weapon, his decision to flee through a crawlspace, his decision to post his crimes to YouTube, and his decision to do all of this while on state probation – demonstrates a lack of judgment and trustworthiness that makes any compliance with pretrial supervision unlikely.

The defense posits that the risks to public safety discussed in this memorandum will be addressed by the Defendant's confinement to a home not on N. Millington and under the care of a third-party custodian. Respectfully, the Defendant's proposed plan to stay with family will not address the concerns at issue here. As discussed, the Defendant can engage in drug-trafficking conduct by phone and electronic communication easily enough. Even strong, well-meaning family should not be expected to restrain the Defendant from criminal conduct when years of state probation supervision have failed to do so. Finally, in the end it is the Defendant's decision-making (not his family's) that will determine whether he complies with pretrial conditions; the

Defendant's decision making in this case leaves no reason to believe that he will comply.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court order that the Defendant remain detained pending trial.

Respectfully submitted,

Erek L. Barron
United States Attorney


By:_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4895
Michael.hanlon@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November 2024, a copy of the foregoing Memorandum was sent by ECF service to:

        Gabriel Reyes, Esquire
        Assistant Federal Public Defender

                              /s/
                      Michael C. Hanlon
                      Assistant United States Attorney